IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Henry W. Martin, Jr., ) | |
| ) | Civil Action No. 6:12-1089-CMC-KFM |
| Plaintiff, ) | |
| ) | |
| vs. ) | **REPORT OF MAGISTRATE JUDGE** |
| ) | |
| William R. Byars, Jr., Director; Dr. ) | |
| Moore, Director of Medical Services; ) | |
| Dr. T. Byrne, ACI; Dr. G. Amonitti, LCI; ) | |
| Nurse NFN Derrick, ACI Health Care ) | |
| Authority; Wayne C. McCabe, Warden ) | |
| LCI; Lisa Hopolomber, NP, LCI; ) | |
| Joseph McFadden, Assoc. Warden LCI; ) | |
| Luclnecia Bryant, Mail Room Asst.; ) | |
| Rose Montee, Business Office, LCI, ) | |
| Cpl. T. Simpson, ACI; Cpl. Melvin ) | |
| Drayton, ACI; Elizabeth Holcomb, NP, ) | |
| LCI; Star Connelly, NP, LCI; and Sylna ) | |
| Jones, Mail Room Supervisory, LCI, ) | |
| ) | |
| Defendants. ) | |
| ) | |

This matter is before the court on the defendants' motion for summary judgment (doc. 109). The plaintiff, a state prisoner proceeding *pro se*, seeks relief pursuant to Title 42, United States Code, Section 1983.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(d) DSC, this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983, and submit findings and recommendations to the District Court.

**PROCEDURAL HISTORY**

On October 30, 2012, the undersigned ordered that the plaintiff's amended complaint be served upon 15 of the 50 named defendants in this action. This court further recommended that the amended complaint be summarily dismissed against the remaining

35 named defendants. The Honorable Cameron McGowan Currie, United States District Judge, adopted the recommendation and dismissed those defendants by orders entered on January 2 and 14, 2013. The only remaining claims in this case are the plaintiff's allegations of deliberate indifference to his serious medical needs in violation of his Eighth Amendment rights and interference with his legal mail in violation of his First Amendment rights. The defendants filed a motion for summary judgment on February 28, 2013. By order filed on March 1, 2013, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion. On May 10, 2013, the plaintiff filed an 80-page[1] response in opposition to the motion for summary judgment, and the defendants filed a reply on May 20, 2013.

## FACTS PRESENTED

The plaintiff is now an inmate at Kirkland Correctional Institution. The allegations giving rise to the plaintiff's claims in this action occurred during his incarceration at Allendale and Lieber Correctional Institutions. With regard to his medical claims, the plaintiff alleges the defendants were deliberately indifferent to his serious medical needs in his treatment for a hernia and in not allowing him to have a cane. The plaintiff alleges that defendant Corporal Simpson confiscated his walking cane without "any security or a penological reason" (doc. 1 at p. 5). The plaintiff alleges that defendant Nurse Derrick and the medical staff at Allendale have not provided adequate medical treatment to him (*id.*). The plaintiff further claims that he was prevented from receiving medical attention and was

---

[1] The plaintiff's response far exceeds the 35 page limit for the initial brief of a party provided in the Local Civil Rules. *See* Local Civil Rule 7.05(B)(1) DSC ("Unless an exception is granted by the Court, no memorandum shall exceed: 35 double-spaced pages, in the case of an initial brief of any party ..."). No exception was granted here. Nonetheless, the undersigned has endeavored to consider the plaintiff's entire brief, although portions of it are virtually incomprehensible. A large portion of the plaintiff's brief appears to be argument regarding the undersigned's previous report and recommendation in this case (doc. 40), which has already been adopted by Judge Currie. The plaintiff is cautioned that in future filings he should abide by the Federal Rules of Civil Procedure as well as the Local Rules.

2

retaliated against by the members of the medical staff after filing a complaint against defendants Nurse Derrick and Dr. Byrne concerning the cane confiscation (*id.* at p. 8).

The plaintiff filed Step 1 and Step 2 grievances in April and May 2010 regarding the confiscation of his cane, which were investigated and denied by Warden Pate of Allendale (doc. 109-5 at pp. 1-5, #ACI-0279-10). In his response to the grievances, Warden Pate specifically instructed the plaintiff to sign up for Sick Call to be evaluated for medical necessity of a cane, but the plaintiff failed to do so (*id.* at pp. 2, 5; doc. 109-3, Derrick aff.). According to Warden Pate, at the time of the plaintiff's grievances, there was a South Carolina Department of Corrections ("SCDC") policy in place that dictated that an inmate must be medically cleared for a cane and have a "cane pass" issued by the medical staff. If an inmate did not have a cane pass, it was SCDC procedure that it should be confiscated as contraband. However, on January 15, 2012, the SCDC procedure was amended. Canes are no longer allowed for any inmates in an SCDC facility. Now, all inmates requiring assistance with ambulation must trade in their canes for walkers or crutches (doc. 112, Pate aff.; doc. 109-7, SCDC Policy #4000.21).

Defendant Dr. Byrne, who is a physician employed by the SCDC to provide medical care to inmates at Allendale and Lieber, states in his affidavit[2] that he was one of the primary care physicians for the plaintiff while he was incarcerated at Allendale and Lieber. Dr. Byrne further attests that he has never personally seen the plaintiff for any medical condition that would lead him to believe that a walking cane is medically necessary for him to use. Moreover, there is no documentation in the medical records of the plaintiff ever being diagnosed with a medical condition that necessitated a cane (doc. 109-2, Byrne aff.). Defendant Nurse Derrick, who is employed by the SDCDC as the Health Care

---

[2] In his response in opposition to the motion for summary judgment, the plaintiff argues that Dr. Byrne's affidavit contains "falsifie[d] information" (doc. 133 at pp. 23-25), but he has provided no evidence in support of this claim.

3

Authority at Allendale, also states in her affidavit that the plaintiff was never issued a cane pass and never requested an evaluation for one. Nurse Derrick states that her only involvement in the confiscation of the plaintiff's cane was her role in advising Warden Pate that a cane pass was required for the possession of a cane by an inmate according to SCDC procedure at that time (doc. 109-3, Derrick aff.).

The plaintiff further alleges that while he was an inmate at Lieber, he was not allowed to receive medical treatment for a right inguinal hernia ("RIH") (doc. 1 at p. 16). He claims that defendants Dr. Amonitti, Nurse Hopolomber, Nurse Connelly, and Warden McCabe aided and abetted each other in preventing him from being admitted to the emergency room for his medical complaints (*id.* at pp. 16-17). The plaintiff filed Step 1 and Step 2 grievances regarding this matter (doc. 109-5 at pp. 9-18, #LCI-0235-12, LCI-0238-12, LCI-0239-12).

According to the plaintiff's medical records, he was diagnosed with the RIH and approved for repair surgery, which he received on July 7, 2010, at an outside clinic that is contracted with SCDC to do surgeries on inmates (doc. 109-4, Encounter 97). The surgery was tolerated well by the plaintiff according to his records, and Dr. Byrne's inspection showed the site was normal soon after the procedure (*id.*, Encounter 100; doc. 109-2, Byrne aff.). On October 25, 2011, the plaintiff returned to sick call at Lieber where he complained that the site of his repaired hernia was once again bothering him (doc. 109-4, Encounters 113-114). He was inspected by Dr. Amonitti who found a non-tender mass around the repair site (*id.*). Dr. Amonitti ordered a CT scan, which was performed on November 23, 2011 (*id.*, Encounter 115). The scan revealed an inflammatory mass, and the plaintiff was again approved for surgery to attempt to alleviate the issue (*id.*, Encounter 120). The plaintiff was transported to Kirkland Surgery Clinic for his problematic hernia to be inspected on January 5, 2012 (*id.*, Encounters 127-128). On January 20, 2012, the plaintiff's medical records indicate that there was an emergency encounter where his wound

had opened and started to bleed. The area was cleaned, and a dry dressing was applied. It was noted that results of the CT aspiration were needed for surgical repair of the hernia (*id.*, Encounter 134). A CT aspiration procedure was performed at Imagecare on the plaintiff's RIH site. The culture results showed negative bacterial growth. A consult for return to the surgery clinic was written by medical staff (*id.*, Encounter 144). From the date of his aspiration procedure until the present, the plaintiff reported to the medical staff for dressing changes and inspection of his wound almost every day (*id.*, Encounters 145-178).

Another follow up surgery to repair the RIH was scheduled for March 29, 2012, with Dr. Parker (*id.*, Encounter 180). However, the plaintiff refused the procedure (*id.*, Encounter 185). The plaintiff was seen in the General Surgery Clinic on June 7, 2012, by Dr. Craft, who recommended an exploratory procedure of the plaintiff's RIH site for wash out of the wound (*id.*, Encounter 197). The procedure was approved on June 11, 2012, and was scheduled for August 8, 2012, at Palmetto Richland Memorial Hospital (*id.*, Encounters 198-199, 202). The plaintiff again refused the surgery (*id.*, Encounter 206). The plaintiff was transferred to Kirkland in July 2012 (*id.*, Encounter 204). After his final refusal of surgery, the plaintiff has had almost daily dressing changes at Kirkland until the present time (doc. 109-2, Byrne aff.).

Dr. Byrne attests in his affidavit that, after a review of the plaintiff's medical records, it is his opinion that the plaintiff has been treated within the proper standard of medical care at all times during his incarceration at Allendale, Lieber, and Kirkland (doc. 109-2, Byrne aff., p. 3). Nurse Derrick also states in her affidavit that it is her opinion that the plaintiff has been treated with the appropriate nursing standard of care (doc. 109-3, Derrick aff., p. 2).

5

The plaintiff also alleges that defendants Sylvia Jones,[3] the Mail Room Supervisor at Lieber, and Ludrean Bryant,[4] Mail Room Assistant at Lieber, have tampered with his legal mail in contravention of his First Amendment rights. Specifically, he alleges that defendant Jones stopped a letter addressed to SCDC Headquarters (doc. 1 at p. 14); defendant Jones signed for a certified letter addressed to the plaintiff from the State Accident Fund and then destroyed the certified receipt (*id.* at p. 24); defendants Jones and Bryant violated his right to confidentiality in using the mail by sharing information with the Lieber medical staff regarding an ongoing investigation of Nurse Derrick and Dr. Byrne initiated by the plaintiff (*id.* at p. 18); defendants Jones and Bryant sent a large brown envelope addressed to the Workers' Compensation Commission by interagency mail rather than the United States Postal Service and wrongly charged the plaintiff's account for it (*id.* at p. 24); and defendants Jones' and Bryant's actions constitute mail fraud (*id.* at pp. 27-29). The plaintiff further alleges that defendant Rose Montee, Business Office Administrative Assistant at Lieber, has "interfered with [the] administration of justice" by refusing to give him the amount of writing and mailing materials he is entitled to under SCDC policy (*id.* at pp. 37-38).

SCDC policy dictates that inmates will be permitted to send legal mail as needed regardless of indigent status, trust fund account balance, or canteen spending limit to officials of federal, state, and local courts (inmate required to demonstrate he has an action pending), attorneys (limited to inmate's attorney of record), judges, the South Carolina Attorney General, and the SCDC Office of General Counsel (this can be sent through inter-departmental mail) (doc. 109-6 at p. 7, SCDC Policy PS-10.08 Inmate Correspondence Privileges; doc. 112-1, Jones aff., p. 2). SCDC policy provides that

---

[3] The plaintiff identifies this defendant as Sylna Jones.

[4] The plaintiff identifies this defendant as Luclnecia Bryant.

6

indigent inmates will be provided with one pencil, 16 sheets of paper, and two envelopes per month (doc. 109-6 at p. 3, SCDC Policy PS-10.08 Inmate Correspondence Privileges). The SCDC stamps these envelopes with a certain date and pays for the postage. The date stamped envelopes must be used by the date indicated, and if they are not used by that date, they are no longer valid (doc. 112-1, Jones aff., p. 2). When a letter is not legal mail, inmates are required to pay the postage, and the Mail Room staff is not required to send packages that do not have proper postage or are not properly labeled (*id.*, pp. 2-4).

Defendants Jones and Bryant submitted affidavits stating that they have never intentionally prevented the plaintiff from sending mail, and they have always attempted to follow SCDC mail policy when deciding how to deal with certain pieces of mail going out or coming in to Lieber. With regard to the plaintiff's allegation that these defendants signed for a certified letter addressed to the plaintiff from the State Accident Fund and then destroyed the certified receipt, Ms. Jones and Ms. Bryant state that this is a false accusation, and receipts are recorded for certified mail. They further state that this type of mail would be delivered directly to the inmate or inspected in the presence of the inmate, although they do not remember this particular piece of mail. With regard to the plaintiff's allegation that they sent a large brown envelope addressed to the Workers' Compensation Commission by interagency mail rather than the United States Postal Service and wrongly charged the plaintiff's account for it, Ms. Jones and Ms. Bryant state in their affidavits that the reason for the interagency mail system is so that inmate letters can be sent without having to pay, and they would not charge an inmate for such a filing (doc. 112-1, Jones aff.; doc. 112-2, Bryant aff.). The plaintiff attached a document to his complaint with regard to this allegation. The "Agreement to Debit E.H. Cooper Account" is dated February 3, 2012, and the note "Privileged. Must have funds available. Sent Interdepartmental." is handwritten across the page. The spaces to be filled out for charges to the plaintiff's account are blank (doc. 1-1 at p. 10), which indicates to Ms. Jones that the plaintiff was not

charged for this piece of mail (doc. 112-1, Jones aff.). Ms. Jones attests that the only reason the plaintiff's mailings would not been processed is if they were in the wrong envelope, mislabeled, or if he did not have sufficient funds. She states that while it is possible she and her staff have made mistakes in the past, these mistakes were not intentional (*id.*).

The plaintiff filed a grievance on May 30, 2012, alleging that defendant Bryant sent his legal mail back to him stating that he needed to use his indigent envelope to mail the document. The document the plaintiff sought to mail was a Notice of Appeal to the Administrative Law Court regarding the denial of a grievance (doc. 109-5 at p. 6). As a result, the plaintiff missed his appeal deadline. Warden McCabe found that the grievance had merit and stated in his decision: "Appropriate action has been taken to prevent this issue in the future. After consultation with the Office of General Counsel, it has been decided you will be reserved LCI-1379-11, in order to allow you to appeal to the ALC if you still wish to do so" (*id.* at p. 7). In her affidavit, defendant Bryant attests that her mistake was "based on confusion of SCDC policy. At no time was I instructed to or have the intent to block Inmate Martin's legal mail" (doc. 112-2, Bryant aff., p. 3).

## APPLICABLE LAW AND ANALYSIS

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and

ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson,* 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds,* 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248.

***Deliberate Indifference to Serious Medical Needs***

Although the Constitution does require that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice." *Jackson v. Fair*, 846 F.2d 811, 817 (1st Cir. 1988). The government is "obligat[ed] to provide medical care for those whom it is punishing by incarceration." *Estelle v. Gamble,* 429 U.S. 97,102 (1976). This obligation arises from an inmate's complete dependency upon prison medical staff to provide essential medical services. *Id.* The duty to attend to prisoners' medical needs, however, does not presuppose "that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Id.* at 105. Instead, it is only when

9

prison officials have exhibited "deliberate indifference" to a prisoner's "serious medical needs" that the Eighth Amendment is offended. *Id.* at 104. As such, "an inadvertent failure to provide adequate medical care" will not comprise an Eighth Amendment breach. *Id.* at 105-106.

In order to state a claim, "[a] plaintiff must satisfy two elements . . . : he must show a serious medical need and he must prove the defendant's purposeful indifference thereto." *Sires v. Berman*, 834 F.2d 9, 12 (1st Cir. 1987). With regard to the objective component, a medical need is "serious" if "it is diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would recognize the necessity for a doctor's attention." *Gaudreault v. Municipality of Salem, Mass.,* 923 F.2d 203, 208 (1st Cir. 1990). "Plaintiffs must also show the subjective component - deliberate indifference. An officer is deliberately indifferent only when he 'knows of and disregards' the risk posed by the serious medical needs of the inmate." *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008) (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

The plaintiff first alleges that the defendants were deliberately indifferent to his serious medical needs by confiscating his cane. Here, the evidence shows that the plaintiff was advised that if he wanted to be allowed to possess a cane, he would have to be seen by the medical staff to get a cane pass. There is no evidence that the plaintiff ever requested an evaluation for a cane pass. Thereafter, the SCDC's policy changed, and all canes were banned. To the extent the plaintiff alleges that defendant Dr. Moore, the SCDC's Director of Medical Services, violated his constitutional rights in enacting the new policy, such argument fails. As stated recently by the Honorable Richard M. Gergel, United States District Judge:

> [A]lthough inmates have certain rights with respect to medical care, prison officials may enact restrictions on these rights when the policies at issue are " 'reasonably related to legitimate penological interests.' " *United States v. Stotts*, 925 F.2d 83, 85–86 (4th Cir.1991) (quoting *Turner v. Safley*, 482 U.S. 78, 89,

10

> 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987)); *see also Overton v. Bazzetta*, 539 U.S. 126, 131, 123 S.Ct. 2162, 156 L.Ed.2d 162 (2003) (noting that "[m]any of the liberties and privileges enjoyed by other citizens must be surrendered by the prisoner. An inmate does not retain rights inconsistent with proper incarceration."). Moreover, the Supreme Court in *Bell v. Wolfish* stated that "[m]aintaining institutional security and preserving internal order and discipline are essential goals that may require limitation or retraction of the retained constitutional rights" of inmates. *Bell*, 441 U.S. 520, 546, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1977). Dr. Moore's decision to substitute walkers for canes was a department-wide directive initiated in response to reports of specific instances where canes had been used as weapons. (Dkt. No. 48–2 at 1–2). Dr. Moore further asserted that it was his medical opinion that walkers provided greater stability for users because of the four points of contact with the ground. *Id*. Based on the record, it is clear that the policy concerning walking canes was reasonably related to prisoner safety and security, a legitimate penological interest.

*Blakely v. Moore*, 5:12-cv-1214-RMG, 2013 WL 980412, at *3 (D.S.C. March 12, 2013). The plaintiff does not argue that he was somehow treated differently than all other inmates in SCDC facilities. Based upon the foregoing, summary judgment is appropriate on this claim.

The plaintiff further alleges that the defendants were deliberately indifferent to his serious medical needs with regard to the treatment of his RIH. In determining whether a prison official is deliberately indifferent to a prisoner's serious medical needs, the court may generally rely on medical records concerning examination and treatment of the prisoner. *See Bennett v. Reed*, 534 F.Supp. 83, 87 (E.D. N.C. 1981). *See also Dulany v. Carnahan*, 132 F.3d 1234, 1240 (8th Cir. 1997) ("In the face of medical records indicating that treatment was provided and physician affidavits indicating that the care provided was adequate, an inmate cannot create a question of fact by merely stating that she did not feel she received adequate treatment."). The medical records indicate that the plaintiff had RIH repair surgery in July 2010 and began having issues with the site in October 2011. The plaintiff had a CT scan and was again approved for surgery to attempt to alleviate the issue.

11

On January 20, 2012, the plaintiff's medical records indicate that there was an emergency encounter where his wound had opened and started to bleed. The area was cleaned, and a dry dressing was applied. A CT aspiration procedure was performed, and from the date of his aspiration procedure until the present, the plaintiff reported to medical staff for dressing changes and inspection of his wound almost every day. The plaintiff was scheduled for a surgery to repair the RIH in March 2012; however, the plaintiff refused the procedure. An exploratory procedure of the plaintiff's RIH site for wash out of the wound was scheduled for August 2012, and, again, the plaintiff refused the procedure.

The plaintiff has failed to establish the subjective component of an Eighth Amendment claim for deliberate indifference to a serious medical claim. Mere negligence or malpractice does not violate the Eighth Amendment. *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999). "To establish that a health provider's actions constitute deliberate indifference to a serious medical need, the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir.1990). Moreover, disagreements between an inmate and a physician over the inmate's proper medical care do not state a Section 1983 claim unless exceptional circumstances are alleged. *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985). Here, the evidence shows that the SCDC medical staff has consistently attempted to figure out the medical reason for the plaintiff's RIH repair issues. The medical staff provided follow up treatment and dressing changes and scheduled two additional surgical procedures, which the plaintiff refused. Based upon the foregoing, summary judgment is appropriate on this claim as there is no evidence the treatment of the plaintiff's RIH was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miltier*, 896 F.2d at 851.

***Interference with Legal Mail***

The plaintiff's allegations that the defendants interfered with his legal mail fail to state a claim because he has not shown any actual injury. To state a claim that a delay or failure in delivering or receiving legal mail violated an inmate's constitutional rights, the prisoner must allege facts showing that "the delay or failure in delivering his legal mail deprived him of meaningful access to the courts." *White v. White*, 886 F.2d 721, 723 (4th Cir. 1989). Accordingly, the plaintiff must show that the alleged "interference with his legal mail caused him to suffer actual detriment to a legal proceeding." *Williams v. Crawford*, 339 F. App'x 288, 289 (4th Cir. 2011) (citing *Lewis v. Casey*, 518 U.S. 343, 349-51 (1996) (holding that a prisoner must show some actual injury resulting from a denial of access in order to allege a constitutional violation)). Here, the only instance coming even close to that requirement was Ms. Bryant's failure to mail the plaintiff's Notice of Appeal to the Administrative Law Court, which resulted in the plaintiff missing a deadline (doc. 109-5 at p. 6). However, this issue was resolved through the grievance process, and the plaintiff was allowed to file his appeal (*id.* at p. 7). Accordingly, the plaintiff cannot show that the alleged interference caused him "to suffer actual detriment to a legal proceeding." *Williams*, 339 F. App'x at 289 (citation omitted). Furthermore, while the plaintiff claims that Ms. Bryant's actions were intended to prevent him from being able to appeal his case, he has failed to show any evidence supporting this claim. The evidence before the court supports, at most, a showing of negligence, which is insufficient to state a claim of denial of access to the courts. *See Sims v. Landrum*, 170 F. App'x 954, 957 (6th Cir. 2006) (holding that prisoner's factual allegations showed nothing more than negligence by prison employee in processing legal mail, which was insufficient to state a claim of denial of right to access to the courts in violation of First Amendment). *See also Blakely v. Wards*, 4:10-718-RMG-TER, 2011 WL 2559601, at *5 n.6 (D.S.C. May 20, 2011) (noting that allegations of negligence by prison employee would not support a denial of access claim), *Report and*

*Recommendation adopted by* 2011 WL 2559536 (D.S.C. June 28, 2011). Based upon the foregoing, summary judgment is also appropriate on this cause of action.

### *Qualified Immunity*

The defendants in their individual capacities are entitled to qualified immunity from civil damages, as described in *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) and its progeny, as the plaintiff has failed to show that the defendants violated any of his clearly established constitutional or statutory rights.

### **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, the defendants' motion for summary judgment (doc. 109) should be granted.[5] Should the district adopt this recommendation, any pending nondispositive motions will be rendered moot.

June 12, 2013                                                        s/ Kevin F. McDonald
Greenville, South Carolina                                United States Magistrate Judge

---

[5] As the undersigned recommends that the plaintiff's claims be dismissed against all defendants on the merits as set forth above, the defendants' remaining arguments for dismissal of individual defendants will not be addressed.

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> 300 East Washington St, Room 239
> Greenville, South Carolina 29601

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).